UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARIAH (f/k/a SKY) MARYSE,

                Plaintiff,

-against-

PFNY LLC et al.,

                Defendants.

23-cv-891 (AS)

OPINION AND ORDER

ARUN SUBRAMANIAN, United States District Judge:

    Plaintiff Mariah Maryse sued defendants (her former employer and other staff members of her former employer) under Title VII, the Americans with Disabilities Act (ADA), the New York State Human Rights Law (NYSHRL), and the New York City Human Rights Law (NYCHRL). Compl. ¶¶ 162–357, Dkt. 1. Defendants move for summary judgment on all claims.

## BACKGROUND

    The following facts are undisputed unless otherwise indicated.

    Defendants PFNY LLC and PF Payroll LLC (collectively, Planet Fitness) "are a franchisee/operator" of Planet Fitness gyms. Dkt. 51 ¶ 1. Maryse was employed as a member-services representative at Planet Fitness in Harlem from March through June 2021. ¶ 6. Maryse's job responsibilities included cleaning, assisting with member sign-ups, giving tours, answering the phones, and canceling memberships. ¶ 11.

    During the events at issue in this lawsuit, defendant Yasmina Perez was the general manager at the Harlem Planet Fitness. ¶ 2. Defendants Enerolisa Gutierrez and Gavin Williams were member-services representatives at the gym. ¶¶ 4–5. Defendant Carlos Torres was the area manager responsible for overseeing several locations, including Harlem. ¶ 3. Perez was Maryse's supervisor, but Perez was on medical leave from roughly March through early June (the majority of Maryse's employment). ¶¶ 14–15. During Perez's leave, Torres was responsible for supervising the Harlem location. ¶ 15.

    Maryse also reported to Diamond Paredes, a member-services representative who became an assistant manager at the Harlem club during Maryse's employment. ¶ 7. Paredes assisted Torres with day-to-day issues and trained Maryse. ¶ 16. Paredes left the Harlem location when Perez returned from leave. ¶ 17. Perez and Paredes never spoke about Maryse. ¶ 18.

    Maryse began onboarding in March 2021. ¶ 20. During onboarding and training, new employees receive the employee handbook and other documents related to Planet Fitness's policies on sexual harassment, discrimination, and disability accommodations. ¶¶ 21–22, 28–29. All these documents must be electronically signed and acknowledged by each new employee upon receipt.

*Id.* Although Maryse claims that he was not provided a copy of the employee handbook, he electronically signed the employee handbook and all the other documents, acknowledging his receipt. ¶ 24. Maryse also completed online trainings regarding various Planet Fitness policies. ¶ 23. Maryse's first shift was on April 20, 2021. ¶ 27.

Maryse says he attends weekly therapy sessions for his anxiety and depression. Dkt. 48-1 at 128:17–129:3. Maryse also says he suffers from ocular albinism, a condition characterized by sensitivity to light and poor eyesight. Dkt. 51 ¶ 33. Defendants say this was never disclosed to anyone at the Harlem club or human resources and that Maryse never requested an accommodation of any type. ¶ 34. Maryse says that he told Perez and Paredes during his interview that his visual impairment prevented him from seeing "small print" or "super far away" and that he would need an accommodation when working at the front desk. Dkt. 48-1 at 75:10–12; Dkt. 51 ¶ 9. Maryse said he also raised concerns with Gutierrez. Dkt. 51 ¶¶ 36–37.[1]

Maryse testified that he was sexually harassed by Williams during his employment. Maryse said that Williams made comments like "I want to suck your dick" and that Williams "expressed that he wanted to grab [Maryse's] dick and ask[ed] about [Maryse's] pubic hair[]." Dkt. 48-1 at 110:5–12; *id.* at 121:9–11. Maryse also testified that Williams's statements went "from like joking" to "eventually doing it," when he "grazed" Maryse's genitals. *Id.* at 121:22–122:2; *id.* at 114:15–115:2. Maryse testified that Williams "offered to help me get promoted if I were to have sex with him." *Id.* at 122:17–18. Maryse says that he told Paredes and Perez what was happening and that he felt uncomfortable going into work or being scheduled around the time that Williams would be scheduled. *Id.* at 119:23–121:13.

The parties agree that "the alleged harassment only occurred while he and Williams were at the front desk area of the Harlem Club." Dkt. 51 ¶ 50. Maryse testified that Williams would make the comments in this area of the club while their shifts overlapped. Dkt. 48-1 at 110:13–18; *id.* at 111:21–112:2. Maryse did not see Williams outside the gym or on the gym floor, and Maryse did not remember Williams ever making harassing statements while Maryse was off-duty or while Maryse was in the employee lounge. *Id.* at 112:3–114:7. Williams said he "hardly would see" Maryse, but he acknowledged that he saw or interacted with Maryse on a "few occasions," about three times at the front desk. Dkt. 48-3 at 75:9–78:19.

Employment records show that Williams and Maryse were both clocked-in at the following times:

- May 12, 2021, for 18 minutes, from 10:01 p.m. to 10:19 p.m.
- June 2, 2021, for 3 minutes, from 10 p.m. to 10:03 p.m.
- June 16, 2021, for 1 hour and 7 minutes, from 10 p.m. to 11:07 p.m.
- June 18, 2021, for 4 minutes, from 10:02 p.m. to 10:06 p.m.

---

[1] Maryse says employees made jokes about his disabilities, but he could not remember if he reported the jokes to anyone at Planet Fitness. Dkt. 48-1 at 180:22–182:7. Maryse's briefing does not rely on these alleged incidents at all or argue that it is relevant to any of his claims.

- June 19, 2021, for 6 minutes, from 10:20 p.m. to 10:26 p.m.

*See* Dkt. 48-13; Dkt. 47.

Text messages between Maryse and Perez as well as Maryse's employment records show the following incidents of absence and lateness during Maryse's employment:

- On June 1, 2021, Maryse called to say that he was not feeling well and would not be able to come in for his shift. Dkt. 48-15. Perez texted him asking him to "[p]lease make sure you find coverage for your shift, if you can't make it you will be held responsible for it." *Id.* Maryse was unable to find coverage, but still did not show up for his shift. *Id.*

- On June 3, 2021, Maryse texted Perez telling her he would be late for his shift the following day due to a doctor's appointment. Dkt. 48-16 at 2. Perez asked what time he would arrive and told him to provide a doctor's note. *Id.* Maryse said he would arrive "no later than" 5:30 p.m. *Id.* At 5:05 p.m., Maryse stated that he would "find a place to get this print[ed] … before I come in" and would "be on my way shortly." *Id.* at 3. Maryse clocked in at 7:50 p.m. Dkt. 48-13.

- On June 9, 2021, Perez texted Maryse at 3:34 p.m., asking why he was late and why he did not communicate with her. Dkt. 48-17. Maryse responded ten minutes later, saying, "There was a delay on the train so I had to take another way.[] I'm actually still on the train. LOL." *Id.* Maryse said he had called to say he would be an hour late. *Id.* Maryse clocked in at 4:07 p.m. Dkt. 48-13.

- On June 16, 2021, Maryse arrived an hour and 47 minutes late to his scheduled shift. Dkt. 48-13 at 2; Dkt. 48-6; Dkt. 48-1 at 166:4–11.

- On June 17, 2021, at 6:03 p.m., Maryse asked Perez if he could leave early because he had "a headache" and his "anxiety [was] through the roof." Dkt. 48-18 at 1. Maryse left at 6:11 p.m. Dkt. 48-13.

- Maryse was 35 minutes late to his shift on June 19, 2021. Dkt. 48-13 at 2; Dkt. 48-6.

- Maryse did not show up for his shift on June 20, 2021. Dkt. 48-13 at 2; Dkt. 48-6. Maryse texted Perez at 10:06 p.m. saying that he would be in at "around 12:30 1:00" (about two and a half hours after the start of his scheduled shift) because he was coming from New Jersey. Dkt. 48-18 at 2; Dkt. 48-1 at 164:12–15. At 10:51 p.m., Maryse said, "I apologize but I won't be able to make in in today." Dkt. 48-18 at 2.

Perez said she spoke with Maryse "[m]ultiple times" about lateness and attendance issues. Dkt. 48-2 at 62:10–14. Maryse remembers having a conversation with Paredes about his attendance but does not remember getting a written warning. Dkt. 48-1 at 156:18–157:10. An "Employee Write Up" shows Maryse's failure to show up for his scheduled shift on June 16, 2021, and his failure to communicate. Dkt. 48-8. The document states that the consequences of further

infractions would be termination. *Id.* The document has Maryse's name written on the "witness signature" line, but Maryse testified that, until his deposition, he had "never seen this document ever," that he "didn't receive this," and that the signature was not his. Dkt. 48-1 at 155:19–156:5.

Maryse was fired on June 20, 2021. Dkt. 48-7. Perez said he was terminated due to his time and attendance issues. Dkt. 48-2 at 72:22–24. Maryse said he didn't "recall being late that often," but that Perez would often tell him that he was inconveniencing the team, that it was unacceptable to be late, and that he did not have a legitimate reason for being late. Dkt. 48-1 at 135:22–136:14.

The parties dispute why Maryse was late. Maryse suggests that it was due to his medical conditions. Maryse claims that he provided documentation after most of his therapy sessions or doctors' appointments. Dkt. 48-1 at 132:19–25. Perez admits that Maryse gave her a doctor's note on one occasion. Dkt. 48-2 at 68:23–69:13. She also says that Maryse told her once or twice that he was also working at Chipotle and sometimes his shifts there ran over, causing him to be late. Dkt. 48-2 at 66:5–66:13.

On June 30, ten days after Maryse's termination, Maryse went to a Planet Fitness gym in Brooklyn. Dkt. 51 ¶ 88. When he arrived, Jules Francois, another member-services representative, told Maryse that he could not use the facilities because his membership had been canceled. ¶ 90. Maryse continued into the gym anyway. ¶ 91. Defendants say that "Francois followed Maryse and attempted to stop him from entering the facilities by standing in front of Maryse and blocking his path" and, in response, "Maryse tried to move Francois out of the way and tackled Francois to the ground." ¶ 92. Defendants say that Maryse then "attempted to climb the outside of the internal staircase at the Flatbush Club to get to the gym floor but was unsuccessful." ¶ 93. When Francois tried to block Maryse's way and pull him away, defendants claim that "Maryse lunged toward Francois and grappled with him." ¶ 94. Maryse claims that when he tried to enter (after being told his membership had been canceled) "Francois physically grabbed him and they became engaged in a tussle." *Id.*

Maryse then left and tried to access another Planet Fitness location where Maryse was again told that his membership was canceled due to his termination and that he could not use the facilities. ¶ 96. The next day, Maryse reached out to a regional manager about the incident. ¶ 97. Planet Fitness investigated the incident and terminated Francois. ¶ 98. Planet Fitness says that Maryse would have also been terminated for his actions. ¶ 99.

## LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if a reasonable jury could find for either side. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is "material" if it could "affect the outcome." *Id.* The Court views the record "in the light most favorable to the non-movant." *Williams v. MTA Bus Co.*, 44 F.4th 115, 126 (2d Cir. 2022) (cleaned up). But if the non-movant will bear the burden of proof on an issue at trial, it must point to some evidence supporting the "essential element[s]" of its position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–26 (1986).

## DISCUSSION

### I. Retaliation Claims

Maryse brings claims for retaliation against Planet Fitness under Title VII, the ADA, NYSHRL, and NYCHRL, claiming that he was terminated in retaliation for his request for disability accommodations and his reports of Williams's harassment.

Claims of retaliation under the ADA, Title VII, NYSHRL, and NYCHRL are all evaluated under the *McDonnell Douglas* burden-shifting framework. *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001); *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 66 (S.D.N.Y. 2020); *Pilgrim v. McGraw-Hill Companies, Inc.*, 599 F. Supp. 2d 462, 469 (S.D.N.Y. 2009). "If the plaintiff establishes a *prima facie* case [of retaliation], the defendant must articulate a legitimate, non-retaliatory reason for its action, and the plaintiff then must show that the offered justification is pretext for retaliation." *Dipinto v. Westchester County*, 2023 WL 1438721, at *8 (S.D.N.Y. Feb. 1, 2023).

A prima facie case of retaliation in violation of the ADA, Title VII, and the NYSHRL requires the plaintiff to show that: "(i) [he] was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002) (citation omitted). Under the NYCHRL, the "*prima facie* standard for retaliation claims … is different, in that there is not the requirement that the employee suffer a materially adverse action. Instead, the [NY]CHRL makes clear that it is illegal for an employer to retaliate in 'any manner.'" *Pilgrim*, 599 F. Supp. 2d at 469.

Here, Maryse argues that he engaged in a protected activity (requesting disability leave and reporting sexual harassment), that defendants knew about this activity, and that he suffered adverse employment actions (namely, his hours were shortened and then he was terminated). Dkt. 52 at 10. But Maryse still cannot make out a prima facie case of retaliation under federal, state, or city law because there is no evidence in the record (disputed or undisputed) that his termination was related to any protected activity. Instead, the record shows that Maryse's termination was the result of Maryse's repeated absences and late arrivals. The undisputed record makes clear that in the weeks prior to his termination, Maryse was consistently late or absent from work.

Maryse argues that there was a "close temporal relationship" between his protected activity and his termination. Dkt. 52 at 10. Citing his deposition testimony, Maryse argues that his hours were cut back soon after requesting disability leave. *Id.* at 11 (citing Dkt. 48-1 at 144:21–25). But the deposition testimony he cites shows no proof of a temporal relationship. Maryse was asked, "When did you notice your hours were being cut?" and he responded, "I don't remember. I think it was shortly after the – I want to say shortly after having the conversation about the – I actually don't remember." Dkt. 48-1 at 144:21–145:2. And Maryse's brief points to no other evidence in the record on timing. If Maryse's hours were cut, there is no evidence in the record indicating that

this was related to his protected activities.[2] *See Russell v. Aid to Developmentally Disabled, Inc.*, 753 F. App'x 9, 14–15 (2d Cir. 2018) (affirming summary judgment because plaintiff could not "rely on temporal proximity between the complaints and her termination" when plaintiff "could not recall when she made any of those complaints" about "gender discrimination and differential treatment").

Even if Maryse could establish a prima facie case of retaliation, he would still be unable to show that defendants' stated reason for his termination (Maryse's lateness and attendance issues) was pretextual. Maryse argues that Perez's comments about his lateness could be construed to show that Maryse's "alleged attendance violations [were] a pretext" for retaliation based on his reporting of sexual harassment. According to Maryse, a jury could interpret Perez's comments to mean that she did not want to modify the schedule to ensure that Maryse would not have to work with Williams. Dkt. 52 at 6. This argument is not supported by the record or common sense. First, there is no testimony by Maryse or anyone else suggesting that Perez made these comments close in time to Maryse's alleged reporting or that Perez said or did anything else that could link the statements about lateness to Maryse's report of harassment. Second, apart from one shift, Maryse and Williams were already not scheduled to work together. So there is no way to construe Perez's comments about Maryse's repeated lateness as instead demonstrating retaliatory termination based on sexual-harassment reporting.

Maryse's brief points to no other evidence and raises no other argument that there was a causal connection between the employment actions and his request for disability leave or his reports of harassment. So the retaliation claims fail.

## II.  Discrimination Claims

Maryse also brings claims for discrimination against Planet Fitness under Title VII, the ADA, NYSHRL, and NYCHRL. It is not clear from Maryse's briefing what theories of discrimination he is pursuing (*i.e.*, hostile work environment, adverse actions based on protected status, or failure to accommodate). So the Court evaluates each potential theory below.

### A.  Federal law – Adverse Employment Action

Claims of discrimination under the ADA and Title VII are evaluated under the *McDonnell Douglas* burden-shifting framework. *Montanez v McDean LLC*, 770 F. App'x 592, 593 (2d Cir. 2019). To establish a prima facie case of discrimination, the plaintiff must show that: "(1) she fell within a protected class under Title VII; (2) she was qualified for the position she held; (3) she was subjected to an adverse employment action; and (4) the adverse action occurred under

---

[2] Maryse says that "he was able to verify that the retaliatory adverse employment action took place after both his accommodation requests and after his lodged complaint being a victim of sexual harassment in the workplace at the hands of a co-worker." Dkt. 52 at 11–12. Maryse cites to paragraph 103 of his counterstatement of material facts. But this document only has 99 paragraphs, so the Court isn't sure what Maryse is relying on.

circumstances giving rise to an inference of discrimination." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015).

Maryse's prima facie case fails at the fourth prong. As already explained, there is no evidence in the record that Maryse's termination was related to anything other than his repeated absences and late arrivals. The undisputed record makes clear that in the weeks prior to his termination, Maryse was frequently late or absent from work. *See Ghose v. Century 21, Inc.*, 12 F. App'x 52, 55 (2d Cir. 2001) (affirming summary judgment on Title VII discrimination claims when defendant showed evidence that plaintiff "failed to work the hours requested or to show up for work in timely fashion").

Maryse raises no argument that these absences or late arrivals were connected to Maryse's sex. Nor does Maryse offer any other explanation for how he could establish an inference of discrimination based on his sex. Maryse does appear to argue that the lateness and absences were the result of his disabilities. At best, there is some evidence that three of the incidents (June 1, June 3, and June 17) could relate to his disabilities since they involve a doctor's appointment or missing work due to illness or anxiety.[3] But that still doesn't account for most of Maryse's attendance issues. For example, on June 9, Maryse stated that he was late because of a "delay on the train." Dkt. 48-17. Maryse's June 20 absence (which occurred the day of his termination) was also related to train delays, not any medical appointment. Dkt. 48-13 at 2; Dkt. 48-6. And there was no explanation in the record as to Maryse's other late arrivals. If defendants had terminated Maryse after a series of sick days, this might be a different case. But the record does not substantiate Maryse's claim that terminating him for attendance issues creates an inference of discrimination.

Nevertheless, Maryse says Perez's statements scolding him for being late show that he was terminated because of his disability. He says that "a reasonable jury could infer that, given the comments by defendant Perez regarding Plaintiff's medical appointment, the decision to terminate Plaintiff was at least *partially* motivated by discriminatory animus resulting from Plaintiff's need to tend to his disability." Dkt. 52 at 5. There is no evidence in the summary-judgment record of comments that would create a genuine issue of material fact here. Indeed, it is unclear what comments Perez made exactly other than voicing a general frustration with Maryse's chronic lateness and absences. Maryse did not provide an affidavit on the motion for summary judgment setting forth what Perez said. Nor does the deposition excerpt cited in Maryse's brief explain the comments. *See* Dkt. 52 at 5 (citing Dkt. 48-1 at 135:22-136:11). Maryse's brief cites to his unverified complaint, but that isn't evidence. *See Bustamante v. KIND, LLC*, 100 F.4th 419, 432 (2d Cir. 2024). And as noted above, while there *might* be some connection between a few of Maryse's absences and his health issues (and even there, Perez's beef was that Maryse failed to

---

[3] The June 17 lateness was only partially explained by Maryse's medical appointment. Maryse's text message indicated that his doctor's appointment ended at approximately 5 p.m., yet he did not arrive to work until nearly 3 hours later. And there is no evidence that his June 1 absence was related to a disability, rather than just a normal illness.

give proper notice or make appropriate arrangements, not any illness or disability itself), there were many other absences having no disability-related basis. Take June 20, the date of Maryse's termination. Maryse texted Perez after his shift began to say he would be two-and-a-half hours late because he was in New Jersey, only to text again 45 minutes later that he wouldn't be able to make it at all. Dkt. 48-18 at 2.

Maryse has simply failed to meet his summary-judgment burden to raise a genuine issue of material fact that he was terminated because of his disabilities. *See Anderson*, 477 U.S. at 252 ("scintilla" of evidence insufficient to oppose summary judgment); *Harlen Assocs. v. Incorporated Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) ("[M]ere speculation and conjecture is insufficient to preclude [summary judgment]."); *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) ("The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.").

Assuming *arguendo* that Maryse had made out a prima facie case of discrimination, his claim would still fail. Defendants say Maryse was terminated because of his attendance issues, which is a nondiscriminatory basis for his termination. *See also Best v. Duane Reade, Inc.*, 715 F. App'x 95, 96 (2d Cir. 2018) ("[T]he district court correctly held that Duane Reade established that it fired Best because of attendance issues, not because of her disability or in retaliation for her complaints."); *Knope v. Garland*, 2021 WL 5183536, at *5 (2d Cir. Nov. 9, 2021) (holding that the plaintiff's "excessive and indefinite absence serves as a legitimate, nondiscriminatory basis for termination"). There is nothing in the record suggesting this rationale was pretextual.

Maryse argues that "Defendants cannot rely on the written warnings that were allegedly provided to Plaintiff as evidence establishing a non-discriminatory reason as Plaintiff denied that he had ever received these written warnings and that he had ever signed acknowledging receipt of them." Dkt. 52 at 7. But whether or not he received a written warning, Maryse admits that he was spoken to about his attendance issues. *See* Dkt. 48-1 at 156:18–157:10. Moreover, the Planet Fitness employee handbook puts employees on notice of this policy. The handbook states that the gym can terminate an individual's employment based on "[e]xcessive absences from work or tardiness," for "[f]ailure to report an absence to your manager, or department head on a scheduled workday," and for "[f]ailure to provide required documentation for an absence." Dkt. 51 ¶ 57.

Maryse also says Perez's alleged comments about Maryse's lateness show pretext. The Court does not understand how comments consistent with the non-discriminatory basis for termination could instead demonstrate pretext. And as previously noted, there is not a sufficient evidentiary connection between comments about Maryse's lateness and his disabilities or sex.

Throughout his brief, Maryse argues that there are issues of credibility that require the claims to go to a jury. The Court disagrees. To be sure, there are disputes in the record (for example, whether Maryse really reported the sexual harassment or disabilities to anyone at Planet Fitness). But these disputes do not give rise to a genuine issue of material fact. Maryse has not been able to identify one shred of evidence in the record connecting his hours or termination to his protected

8

status or protected activities. Maryse did not provide a record of his doctor's appointments to show that they explained his lateness. He did not point to the employment records of another employee to show that he was the only one fired for being untimely. And he did not even submit an affidavit substantiating the unsupported arguments raised by his attorneys in opposition to this motion. Instead, the record consistently demonstrates that Maryse had poor attendance and punctuality (for reasons unrelated to his protected status or protected behaviors) and was terminated as a result.[4]

### B. ADA – Failure to Accommodate

Maryse also says that summary judgment should be denied with respect to his ADA claim because defendants failed to offer him a disability accommodation. "In so-called reasonable-accommodation cases, … the plaintiff's burden requires a showing that (1) plaintiff is a person with a disability under the meaning of the [statute]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006) (internal quotations omitted).[5]

The failure-to-accommodate claim fails for similar reasons as Maryse's disability-discrimination claims: Maryse could not perform the essential functions of his job given his repeated absences and lateness. "[R]egularly attending work is an essential function of virtually every job," and it "was especially important to [Maryse's] job, where employees had to be present" at the front desk. *Vandenbroek v. PSEG Power, CT LLC*, 356 F. App'x 457, 460 (2d Cir. 2009) (internal quotation marks omitted). There is also no evidence indicating that his disabilities (visual impairment, anxiety, depression, foot pain) were related to most of the absences or lateness discussed above. So the evidence demonstrates that Maryse could not perform the essential functions of his job with a reasonable accommodation because Maryse had attendance issues unrelated to his disability.

The record also indicates that Maryse was provided accommodations for his disabilities. For example, Maryse admits that defendants told him that time off for his foot surgery in May 2021 was "not a problem." Dkt. 52 at 20. He also said that colleagues would help him clock in and out given his visual impairment. Dkt. 48-1 at 93:14–21; *id.* at 95:19–96:10. And there is no evidence that he was scheduled for shifts during any of his weekly therapy appointments. The Court is unsure of what accommodation Maryse was seeking that he did not receive.

---

[4] Defendants argue that, if any claims survive summary judgment, damages should be cut off as of the date that Maryse got into a physical fight with another employee, because this conduct would have led to his termination. Dkt. 46 at 24. Since the Court is granting summary judgment in favor of defendants on all claims arising from allegedly unlawful termination, the Court need not reach this argument.

[5] Maryse's briefing mentions only the ADA. But it makes no difference whether Maryse is pursuing a failure-to-accommodate claim under state or city law as well, because "[c]ourts apply the same standard for failure to accommodate cases under the ADA, … NYSHRL, and NYCHRL." *Arazi v. Cohen Bros. Realty Corp.*, 2022 WL 912940, at *6 (S.D.N.Y. Mar. 28, 2022).

C. Title VII – Hostile Work Environment

A Title VII claimant may also establish an employer's liability under a hostile-work-environment theory if the employee was "subjected to harassment on account of" his sex. *Tassy v Buttigieg*, 51 F.4th 521, 529 (2d Cir 2022). A "hostile work environment claim requires a showing [1] that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (internal quotation marks omitted, alterations in original). The plaintiff "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Id.* at 374 (internal quotation marks omitted). This standard includes "both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014).

"In a situation such as this, when the harassment is attributable to a coworker, rather than a supervisor, the employer will be held liable only for its own negligence." *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009) (cleaned up). Maryse must demonstrate that his employer "failed to provide a reasonable avenue for complaint" or that "it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000) (citation omitted).

Genuine issues of material fact preclude summary judgment on this claim. First, there are disputes as to what Williams did. Maryse testified that while working with Williams, Williams "expressed that he wanted to grab [Maryse's] dick and ask[ed] about [Maryse's] pubic hair[]." Dkt. 48-1 at 121:9–11. Maryse also testified that Williams's statements went "from like joking" to "actually like trying to grab and then eventually doing it," meaning grabbing Maryse's genitals. *Id.* at 121:22–122:2; *see also id.* at 114:19–24 ("I have albinism or whatever, he was just like, you know, are your pubic hairs blond? You know, he would ask to touch my dick. There was one time when he actually did – or you can say he grazed it, whatever."). Maryse testified that Williams "offered to help me get promoted if I were to have sex with him." *Id.* at 122:17–18. Defendants point out that (even according to Maryse) all the harassment occurred while he and Williams were working together, which occurred for a total of less than two hours. But even a single incident of harassment may be enough when the incident includes "[d]irect contact with an intimate body part." *Domingues v. Barton Chevrolet Cadillac*, 2021 WL 637016, at *5 (S.D.N.Y. Feb. 17, 2021) (citation omitted) (collecting cases).

There are also questions of material fact as to whether the conduct can be imputed to Planet Fitness. Planet Fitness's employee manual states: "Any employee who believes that he or she has been subjected to prohibited harassment, discrimination or retaliation by a co-worker, supervisor, agent, client, vendor or customer of Planet Fitness … should immediately provide a written or verbal report to his or her manager." Dkt. 48-10 at 20. And Maryse testified that he reported these

statements in "generalized" terms to Perez and Paredes. Dkt. 48-1 at 119:23–121:13. (Maryse also testified that he reported this to Gutierrez, though it does not appear Gutierrez was a manager at the time. *Id.*). Assuming Maryse's testimony is true, there is no evidence that any investigation or action was taken in response to this report. *See Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 64 (2d Cir. 1998) ("[The supervisor's] knowledge is also imputed to [the employer] on an independent ground, namely that he had a responsibility to relay sexual harassment complaints to the company under the express policy promulgated by the company.").

Defendants argue that the Court should grant summary judgment because none of the evidence in the record—other than Maryse's "unsubstantiated allegations" and "self-serving deposition testimony"—supports Maryse's claims. Dkt. 46 at 14. To be sure, Maryse has not pointed to any other evidence substantiating his claim. But this is not a case in which Maryse's testimony was "contradictory and incomplete" so as to be completely disregarded. *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005). Instead, Maryse testified that he was harassed in a manner that could give rise to a Title VII claim and that he reported that harassment to managers. To the extent that Defendants doubt Maryse's veracity, they will have the chance to make their case to the jury.

### D.  State and city law

"The NYCHRL does not distinguish between claims of 'discrimination' and 'harassment' or hostile work environment[.]" *Mitura v. Finco Servs., Inc.*, 2024 WL 232323, at *3 n.3 (S.D.N.Y. Jan. 22, 2024). To state a discrimination claim under city law, a "plaintiff need only show differential treatment—that she is treated less well—because of a discriminatory intent." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (internal quotation marks omitted); *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 36–41 (1st Dep't 2009). The NYSHRL standard is "close[] to the standard of the NYCHRL." *Mitura*, 2024 WL 232323, at *4 n.4 (citation omitted). Under state law, a plaintiff must show that he was subjected to "inferior terms, conditions or privileges of employment because of the individual's membership in one or more of the protected categories." *Id.* at *4 (cleaned up).

For the reasons stated above, while Maryse's claims based on his termination cannot be sustained under the NYSHRL or NYCHRL, the claims may proceed to trial to the extent based on the alleged failure to act in response to Williams's alleged harassment.

### III.  Individual Liability

Maryse claims that Defendants Perez, Williams, Gutierrez, and Torres are individually liable for aiding and abetting discrimination under NYSHRL and NYCHRL. "Under the NYSHRL, individual liability may be imposed if … a defendant aided and abetted the unlawful discriminatory acts of others" or "actually participated in the conduct giving rise to a discrimination claim." *Yu v. Shanghai Dumpling, Inc.*, 2023 WL 3728347, at *5 (S.D.N.Y. May 30, 2023). The NYCHRL "provides for individual liability … if the individual defendant actually participated in the conduct giving rise to the claim." *Id.*

11

Defendants' only argument against individual liability is that Maryse has not made out a "valid primary claim for discrimination or retaliation." Dkt. 46 at 22. The Court disagrees, since Maryse's claims based on defendants' failure to act in response to Williams's harassment survive summary judgment. And there is at least some potential evidence linking each defendant to the alleged harassment. For example, Maryse testified that he reported the harassment to Gutierrez, Perez, and Paredes. Dkt. 48-1 at 119:23–121:13. And Perez appears to have spoken with Torres about "a specific situation where [Maryse] was scared to come in" to work. Dkt. 48-2 at 15:22–25.

So the Court will not grant summary judgment on this claim. But Maryse is warned that, at trial, he will need to prove not only the facts of the harassment, but also involvement by each of the individual defendants.

## CONCLUSION

For the reasons explained above, defendants' motion for summary judgment is DENIED with respect to Maryse's claims related to defendants' alleged failure to act in response to Williams's alleged harassment. Defendants' motion is GRANTED in all other respects, including with respect to any claim related to the reduction of Maryse's hours and ultimate termination.

Trial in this case will commence on **September 9, 2024**.

The Clerk of Court is directed to terminate Dkt. 44.

SO ORDERED.

Dated: June 20, 2024
New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge